Ruffin, Chief Justice,
 

 having stated the case as above, proceeded as follows: We had occasion, in an action at law, some years ago, to intimate some c; the opinions we had upon this will.
 
 Cloud
 
 v. Martin, 1 Dev. and Bat. 397. Upon a re-perusal of it, we all think as we then did, as to the extent of the benefit intended for the grand-son.. The education to be provided from the estate, was that which would be received during the period the children were to be “ raised and
 
 *277
 
 taken care of” by their uncle; which, it seems to us, must be while they were'infants and. going to school. The did not mean that James Martin should control the grand-son. in the choice of a profession; and, of course, not that his maintenance, while he was studying a profession, should be paid out of his estate. The testator could not have intended to make his bounty in this respect dependent upon his grandson’s being fit for, or choosing the profession of the law only. It would not be reasonable to suppose so; and it seems quite clear that there would be no pretence for claiming his support out of the estate, while acquiring any other profession or art. It follows, that it is to be the same, should he study law. The reason why the allowance was not continued by the tes'tator was, that at full age the grand-son would have the entire control of the capital of his own small properly; and its accumulations during his minority, as well as the specific legacies given in the will; which together, would be an adequate provision for this purpose.
 

 From the terms employed by the testator, we conclude also, that it was not his purpose to have this young man sent to College at the expense of his estate. - If it had been, there would not have been the restriction to the three languages, which constitute the rudimental education of grammar schools or the academies of the country. At institutions of that character, it appears, by the evidence, the testator had placed some of his own sons, and that one of them was then sent to college. Though himself illiterate, the testator Was aware, from experience, of the difference between those sem. inaries of learning. We have no doubt, therefore, that he designed to have this youth bred at such grammar schools in his vicinity as his own sons had been brought up in, tinder his own directions; and that his clothing should be of that plain and cheap kind which is made in country families; such as he provided for his own sons, while at those schools. The expenses of such clothing and his board, at school, during a reasonable period for the acquisition of the specified degree of knowledge, we think, is charged on the testator’s estate. What, education this person acquired, how long he was at school* whether the schools were proper, how much longer
 
 *278
 
 or to what other schools, if any, he ought to have been sent, are qnest-ions on which the case must go before themas-ter, if either of the parties wish an enquiry upon them. So it must be referred to the master, to ascertain what were the expenses of this plaintiff’s board, clothing and tuition, while at school, or what would be a reasonable sum therefor, according to the particulars already mentioned; and what proportion of such expense was defrayed by
 
 James
 
 Martin, or out of the testator’s effects; and what proportion remains still unpaid.
 

 íor"im-e^a balance of ryetfaté'Tñ am/waíeU and become insolvent, ■the Joss
 
 *279
 
 ,, those enti-residue,and benefit a, parncular was di-
 

 
 *278
 
 The Court is also of opinion, that the testator did not mean to maintain his grand'-daughters absolutely until full age or marriage: nor to fake them from under their maternal roof and government. He meant that the expenses of their tuition should be borne by his property, and such plain apparel found during the time as was usual for children in the conn, try, and also their board, if it became necessary that they should be sent from home to go to school, or to a proper school. Of course, this allowance cannot be extended beyond the age at which
 
 yoimg women
 
 in the same station Of life with these are deemed capable of providing for them_ selves, or of rendering such services in the paternal house, hold as will compensate' for their maintenance. What shall be a proper allowance in this case, also, is a question which must go to the master; to whom the parties can give evidence directed to the point; and, likewise, what sum has been paid, and ought yet to be paid, on that account.
 

 At present, it is not necessary the Court should say any thing on that part of the defence set up, which is founded on the supposition that an ample fund was raised and retained by James Martin; and, therefore, that the estate ought not to be burdened again. What
 
 may be the law,
 
 ifthefactshould so turn out, it may be material hereafter to inquire. But, it d.°es not aPPSar¡ as yet, that any fund was set apart for this purpose; but only that James Martin, as administrator, had a balance of the residuary estate in his hands, which, it is said, wasted. Now, admitting it to have been so, that loss ought not to fall on these persons more than on the residuary
 
 .
 
 ^
 
 J
 
 legatees; for it was not set apart or dedicated to this purpose
 
 *279
 
 in particular, or in any manner secured therefor. The loss must, therefore, fall on those entitled to the residue.
 

 As the defendant does not admit assets of the testator in his hands to answer this demand, and denies his liability for the
 
 devastauit
 
 of James Martin, of course, an account be taken of the estate of thé testator that was, at his death, ' . . liable under the will to this charge, and of its tion, so as to shew whether the defendant has, or ought have, of the estate of his testator, any fund to answer the recovery of the plaintiffs.
 

 Per Curiam. Order accordingly.